20MAG.3073

ORIGINAL

Approved: __Ni Qian__/s/
NI QIAN
Assistant United States Attorney

Before:    HONORABLE GABRIEL W. GORENSTEIN
           Chief United States Magistrate Judge
           Southern District of New York

------------------------------------x
                                    :
UNITED STATES OF AMERICA            :    COMPLAINT
                                    :
           - v. -                   :    Violation of 21 U.S.C.
                                    :    § 846
CHRISTIAN OMAR DE LA TORRE          :
VILLALVAZO,                         :
JIMMY LOPEZ ARIZMENDI, and          :
HECTOR CARRILLO-VILLA,              :
                                    :    COUNTY OF OFFENSE:
           Defendants.              :    New York, Bronx
                                    :
------------------------------------x

STATE OF NEW YORK          )
                           ) ss:
SOUTHERN DISTRICT OF NEW YORK )

   JULIAN BOWSER, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

   1. In or about March 2020, in the Southern District of New York and elsewhere, CHRISTIAN OMAR DE LA TORRE VILLALVAZO, JIMMY LOPEZ ARIZMENDI, and HECTOR CARRILLO-VILLA, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

   2. It was a part and an object of the conspiracy that CHRISTIAN OMAR DE LA TORRE VILLALVAZO, JIMMY LOPEZ ARIZMENDI, and HECTOR CARRILLO-VILLA, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

1

3. The controlled substances that CHRISTIAN OMAR DE LA TORRE VILLALVAZO, JIMMY LOPEZ ARIZMENDI, and HECTOR CARRILLO-VILLA, the defendants, conspired to distribute and possess with intent to distribute were (i) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

5. I am a Special Agent with HSI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. Since at least in or about March 2020, HSI has been conducting an investigation into individuals who are believed to be distributing heroin and fentanyl in the New York City area. During the course of this investigation, I and other HSI agents have worked with a confidential source ("CS-1").[1]

7. Based on my participation in this investigation, including my review of law enforcement reports and records, and my conversations with CS-1 and with other law enforcement officers, including a Spanish-speaking officer who debriefed CS-1 and reviewed the recorded phone calls and in-person meetings

---

[1] CS-1 has been providing information to HSI for approximately six years. CS-1 receives immigration and financial benefits for CS-1's work on behalf of law enforcement. The information provided by CS-1 has proven reliable in the past and has been corroborated in part by other evidence, including surveillance by law enforcement, recordings, and the seizure of narcotics.

2

discussed below, I have learned, in substance and in part, the following:

       a.    In or about March 2020, CS-1 began communicating, at the direction of law enforcement, with an individual subsequently identified, as described herein, as CHRISTIAN OMAR DE LA TORRE VILLALVAZO, the defendant, to discuss engaging in narcotics trafficking transactions. On or about March 18, 2020, CS-1 called DE LA TORRE VILLALVAZO on a particular cellphone number ("Cellphone-1"). During this recorded phone conversation in Spanish, DE LA TORRE VILLALVAZO told CS-1, in sum and substance, that he is in New York from out of town and that he had stuff to sell to CS-1. When CS-1 asked DE LA TORRE VILLALVAZO whether DE LA TORRE VILLALVAZO had the stuff that makes the body sweat, "grasa," DE LA TORRE VILLALVAZO confirmed that he did. Based on my training and experience, I understand that this was a reference to heroin. DE LA TORRE VILLALVAZO also told CS-1, in sum and substance that he had pills to sell CS-1. DE LA TORRE VILLALVAZO and CS-1 then discussed, in sum and substance, the pricing for the heroin and the pills, and DE LA TORRE VILLALVAZO agreed to sell to CS-1 heroin for approximately $30,000 to $32,000 per kilogram and pills for approximately $10 per pill.

       b.    On or about March 19, 2020, CS-1 and DE LA TORRE VILLALVAZO communicated again by cellphone, and they agreed to meet at a particular location in Manhattan, New York (the "Meeting Location").

       c.    Later that day, at approximately 2:00 p.m. on March 19, 2020, CS-1 arrived at the Meeting Location in his vehicle (the "CS-1 Vehicle"). CS-1 called Cellphone-1 and gave DE LA TORRE VILLALVAZO a description of the CS-1 Vehicle and where the CS-1 Vehicle was parked. DE LA TORRE VILLALVAZO subsequently entered the CS-1 Vehicle along with two individuals subsequently identified, as described herein, as JIMMY LOPEZ ARIZMENDI and HECTOR CARRILLO-VILLA, the defendants.

       d.    Inside the CS-1 Vehicle, during a recorded conversation in Spanish, DE LA TORRE VILLALVAZO told CS-1, in sum and substance, that approximately 3,000 M-30s were available for sale, and CS-1 could purchase however much he wanted at approximately $9 per pill. DE LA TORRE VILLALVAZO also told CS-1, in sum and substance, that they (*i.e.*, DE LA TORRE VILLALVAZO, LOPEZ ARIZMENDI, and CARRILO-VILLA) would be able to sell CS-1 however much heroin CS-1 wanted, up to approximately 20 kilograms a week, for approximately $31,000 per kilogram,

3

because he (DE LA TORRE VILLALVAZO) had a source in Mexico, but that he wanted to start with one kilogram for now to establish trust. DE LA TORRE VILLALVAZO then tried to convince CS-1, in sum and substance, to go with them to a nearby diner so that they could provide CS-1 with a sample of the narcotics discussed. CS-1 refused, consistent with prior direction from law enforcement, and DE LA TORRE VILLALVAZO, LOPEZ ARIZMENDI, and CARRILLO-VILLA thereafter left the CS-1 vehicle. Based on my training and experience, I understand M-30s to be a reference to fentanyl pills, typically from Mexico.

   e. Shortly thereafter, law enforcement officers conducting surveillance observed DE LA TORRE VILLALVAZO, LOPEZ ARIZMENDI, and CARRILLO-VILLA reenter the CS-1 Vehicle. Inside the CS-1 Vehicle, during a recorded meeting in Spanish, the defendants provided CS-1 with samples of narcotics, as previously agreed in the earlier meeting inside Vehicle-1 discussed above. CARRILLO-VILLA handed CS-1 two small clear plastic twists, one containing approximately 10 blue pills and the other containing a brown powdery substance. Based on my training and experience, the appearance of the blue pills is consistent with fentanyl pills, and the appearance of the brown powder is consistent with heroin. The brown powder subsequently field-tested positive for heroin. After receiving the samples of heroin and fentanyl, CS-1 told DE LA TORRE VILLALVAZO, LOPEZ ARIZMENDI, and CARRILLO-VILLA, in sum and substance, that CS-1 would take the samples back to his people and that CS-1 would contact them later for the purpose of engaging in further purchases. DE LA TORRE VILLALVAZO, LOEPZ ARIZMENDI, and CARRILLO-VILLA then exited the CS-1 Vehicle. Law enforcement officers observed DE LA TORRE VILLALVAZO, LOPEZ ARIZMENDI, and CARRILLO-VILLA enter a nearby subway station and board a subway train heading north in the direction of the Bronx, New York.

   f. Approximately an hour later, CS-1 spoke to DE LA TORRE VILLALVAZO on Cellphone-1, and, in a recorded phone conversation in Spanish, CS-1 told DE LA TORRE VILLALVAZO, in sum and substance, that CS-1 would like to purchase four kilograms of heroin and 500 pills. DE LA TORRE VILLALVAZO told CS-1, in sum and substance, that he could not sell four kilograms of heroin at once, but would sell only one kilogram at first to establish trust. In response, CS-1 told DE LA TORRE VILLALVAZO, in sum and substance, to bring one kilogram and 800 pills. DE LA TORRE VILLALVAZO agreed and told CS-1, in sum and substance, that they (*i.e.*, DE LA TORRE VILLALVAZO, LOPEZ ARIZMENDI, and CARRILLO-VILLA) were in the Bronx to give another customer a sample, and that they will meet CS-1 at the Meeting

Location. Based on my training, experience, and participation in this investigation, I believe that DE LA TORRE VILLALVAZO was informing CS-1 that he was in the Bronx with LOPEZ ARIZMENDI and CARRILLO-VILLA providing a sample of heroin and/or fentanyl to another drug customer.

g. Later that afternoon of March 19, 2020, law enforcement officers conducting surveillance saw DE LA TORRE VILLALVAZO, LOPEZ ARIZMENDI, and CARRILLO-VILLA return to the vicinity of the Meeting Location and enter a hotel ("Hotel-1") near the Meeting Location.

h. At approximately 4:20 p.m. on March 19, 2020, DE LA TORRE VILLALVAZO called CS-1 from Cellphone-1 and told CS-1, in sum and substance, that they wanted to meet at their hotel. CS-1 then drove to the vicinity of the Meeting Location, and called DE LA TORRE VILLALVAZO to let him know that CS-1 had arrived.

i. After CS-1 arrived in the vicinity of Hotel-1, law enforcement officers observed DE LA TORRE VILLALVAZO exit Hotel-1 and enter the CS-1 Vehicle in the rear passenger seat. Inside the CS-1 Vehicle, during a recorded conversation in Spanish, DE LA TORRE VILLALVAZO reiterated to CS-1, in sum and substance, that he could sell CS-1 up to 20 kilograms of heroin a week in the future, but he only had some product for now, and that he had to break off a piece of what was CS-1's product to give to someone else. Based on my training, experience, and participation in this investigation, I understand DE LA TORRE VILLALVAZO to mean that he had one kilogram of heroin to sell to CS-1 as they had previously discussed, but that DE LA TORRE VILLALVAZO had to break some portion off the kilogram of heroin to sell to another customer.

j. DE LA TORRE VILLALVAZO then, in sum and substance, tried to convince CS-1 to go with him into his hotel room to execute the planned narcotics sale. CS-1 refused, consistent with prior direction from law enforcement. DE LA TORRE VILLALVAZO then made a phone call and, shortly thereafter, law enforcement officers observed LOPEZ ARIZMENDI exit Hotel-1 and enter the CS-1 Vehicle in the front passenger seat. After LOPEZ ARIZMENDI entered the CS-1 Vehicle, LOPEZ ARIZMENDI displayed three rectangular packages wrapped in black tape (the "Three Packages"), and a plastic bag filled with blue pills, which appeared consistent with fentanyl pills, and weighed approximately 90 grams. Based on my training, experience, and participation in this investigation, I believe that DE LA TORRE

5

VILLALVAZO had called LOPEZ ARIZMENDI and told him to come to the CS-1 Vehicle from Hotel-1 to provide the narcotics to CS-1. Upon seeing what CS-1 believed to be additional quantities of narcotics (*i.e.*, the Three Packages and the plastic bag containing blue pills), CS-1 exited the CS-1 Vehicle and opened the trunk of the car, where sham cash provided by law enforcement was stored. At that point, law enforcement officers approached and arrested DE LA TORRE VILLALVAZO and LOPEZ ARIZMENDI. The Three Packages weighed approximately 891 grams. Based on my training, experience, and participation in this investigation, I believe that the Three Packages contain heroin.

        k. Incident to the arrest of DE LA TORRE VILLALVAZO, law enforcement officers seized from DE LA TORRE VILLALVAZO (i) two cellphones; (ii) a bag of blue pills, which weighed approximately 40 grams and appeared consistent with the suspected blue fentanyl pills that LOPEZ ARIZMENDI displayed to CS-1 in the CS-1 Vehicle and that CARRILLO-VILLA previously gave CS-1 as a sample; and (iii) a hotel key card. Incident to the arrest of LOPEZ ARIZMENDI, law enforcement officers seized from LOPEZ ARIZMENDI one cellphone and one hotel key card.

        l. Law enforcement officers took the two hotel key cards seized from DE LA TORRE VILLALVAZO and LOPEZ ARIZMENDI to Hotel-1, where they determined, after speaking with hotel personnel, that both hotel key cards opened a single room in Hotel-1 ("Hotel Room-1").

        m. Law enforcement officers then went to Hotel Room-1, and opened the door to Hotel Room-1 with one of the seized hotel key cards. Inside Hotel Room-1, they observed CARRILLO-VILLA, who, as described above, had previously provided CS-1 the sample of heroin and suspected fentanyl pills. Law enforcement officers arrested CARRILLO-VILLA.

        n. After DE LA TORRE VILLALVAZO was advised of his *Miranda* rights, DE LA TORRE VILLALVAZO admitted, in substance and in part, that he had broken the heroin he had into four pieces, and gave three of those pieces to CS-1 (as described above, the Three Packages provided to CS-1 contained approximately 891 grams of suspected heroin).

        o. After LOPEZ ARIZMENDI was advised of his *Miranda* rights, LOPEZ ARIZMENDI gave verbal and written consent to search Hotel Room-1, which law enforcement determined, based on information provided by Hotel-1 personnel, was rented under LOPEZ ARIZMENDI's name.

p.  During a search of Hotel Room-1, law enforcement officers recovered, among other things, (i) two additional bags of blue pills that appear consistent with the sample of suspected blue fentanyl pills that CARRILLO-VILLA had earlier given to CS-1, the bag of suspected blue fentanyl pills LOPEZ ARIZMENDI showed CS-1 in the CS-1 Vehicle, and the bag of suspected blue fentanyl pills seized from DE LA TORRE VILLALVAZO; and (ii) one additional cellphone inside a suitcase that also contained a bus ticket with DE LA TORRE VILLALVAZO's name. Based on the foregoing, and my training, experience, and participation in this investigation, I believe that the two bags of blue pills seized from Hotel Room-1 are fentanyl pills. Those two bags of fentanyl pills weighed approximately 144 grams.

WHEREFORE, I respectfully request that CHRISTIAN OMAR DE LA TORRE VILLALVAZO, JIMMY LOPEZ ARIZMENDI, and HECTOR CARRILLO-VILLA, the defendants, be imprisoned or bailed, as the case may be.

JULIAN BOWSER
Special Agent
Homeland Security Investigations

Sworn to before me this
20th Day of March, 2020

THE HONORABLE GABRIEL W. GORENSTEIN
CHIEF UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7